## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| **JEROME FORREST** ) | |
| **7532 Roxy Drive** ) | |
| **Windsor Mill, MD 21244** ) | |
| ) | **Case No.: 1:22-cv-3220** |
| *Plaintiff,* ) | |
| ) | |
| **v.** ) | |
| ) | |
| **BALTIMORE CITY, MARYLAND:** ) | |
| **BALTIMORE POLICE DEPARTMENT** ) | |
| **242 W. 29th Street** ) | **JURY TRIAL DEMANDED** |
| **Baltimore, MD 21211** ) | |
| ) | |
| *Defendant.* ) | |
| ) | |
| **Serve:** ) | |
| ) | |
| **The Baltimore City Law Department** ) | |
| **Office of Legal Affairs** ) | |
| **C/O City Hall, Room 101** ) | |
| **100 N. Holliday St., Suite 101** ) | |
| **Baltimore MD, 21202** ) | |
| ) | |
| **Baltimore Police Headquarters** ) | |
| **601 E. Fayette St.** ) | |
| **Baltimore, MD 21202** ) | |

## COMPLAINT FOR EQUITABLE RELIEF AND COMPENSATORY DAMAGES

COMES NOW, Jerome Forrest, Plaintiff, (hereinafter "Plaintiff") by and through undersigned counsel, and complains against Defendant, Baltimore City Police Department, (hereinafter "Defendant" or "BPD") and in support thereof states as follows:

## INTRODUCTION

1. On August 10, 2016, the Department of Justice published a scathing report about the Baltimore Police Department's widespread constitutional violations, the targeting of

African Americans, and a culture of retaliation. And, while the investigation and report focused largely on how Baltimore police abused the law, the people they were meant to serve, and the public trust, the complicit institutional engine that acquiesces in the destruction and demise of BPD's own Black women officers and sergeants remains pervasive, continuous, and swept under the rug. ***This case is about when the police are fearful of the police—their own brothers and sisters in blue.***

2. This is an action authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"); the Civil Rights Act of 1866, Section 1981(a) ("Section 1981"), 42 U.S.C. § 1320d-6, *et seq.*; and the Maryland Fair Employment Practices Act, Md. Code § 20-601, *et seq.* (FEPA) for the Defendant's unlawful harassment, discrimination based on race and color (African American, Black), hostile work environment, and retaliation against the Plaintiff, including, but not limited to, Defendants' unlawful and discriminatory preference and treatment, as well as retaliating against Plaintiff for his statutorily-protected activity.

## JURISDICTION AND VENUE

3. This Honorable Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1331as it asserts a claim that arises under the Constitution, laws, or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.*, Sections 1981 and 1983, and the First Amendment of the U.S. Constitution to redress and enjoin employment practices of the Defendant.

4. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

5. Venue is appropriate because a substantial part of the actions complained of are the result of actions and employment practices of Defendant, which operates in Baltimore, Maryland.

6. Additionally, venue is proper in the District of Maryland Court pursuant to 28 U.S.C. §§ 1391(b) and (e) because a substantial part of the wrongful conduct complained of herein occurred in this District, Defendants transact substantial business in this District, and Defendants maintain employment records related to this action in the District of Maryland.

## EXHAUSTION OF REMEDIES

7. Plaintiff has exhausted all of his administrative remedies.

8. Plaintiff filed a complaint with the Baltimore Field Office of the U.S. Equal Employment Opportunity Commission (EEOC) on December 7, 2021 (Charge No. 531-2022-00861) alleging race and color (African American, Black) discrimination, retaliation, and hostile work environment, in addition to his internal complaint, EODS Case Number: No. 2019-EEO-005.

9. On September 26, 2022, the EEOC issued Plaintiff a Right-to-Sue Letter.

10. Accordingly, Plaintiff timely files this action in accordance with the Notice of Rights, which provided Plaintiff the right to file this Complaint within 90 days of receipt of the Notice.

## NATURE OF THE ACTION

11. Plaintiff brings this action to secure protection of rights granted under the statutes mentioned above, to redress deprivation of rights thereunder, and to obtain such other relief as is necessary to redress the injury to Plaintiff resulting from Defendant's violation of those statutes.

12. Plaintiff's damages are significant, including, but not limited to, the loss of reputation, career advantage, emotional tranquility, and denial of his constitutional and statutory rights.

13. The action seeks declaratory and injunctive relief, as well as compensatory and punitive damages, both to secure future protection and to redress the past deprivation of rights guaranteed to named Plaintiff.

## PARTIES

14. Plaintiff, Lieutenant Jerome Forrest, is an African American male who resides in Baltimore County.

15. Defendant is a municipal police force, whose jurisdiction encompasses Baltimore, Maryland, the State's largest city.

16. The BPD is the 8th largest municipal police force in the United States, staff by nearly 3,100 civilian and sworn personnel. The Department's jurisdiction covers Maryland's largest city, with a population of 611,648.

17. Lt. Forrest works at the Baltimore Police Department ("BPD") and is a member of Baltimore City Lodge No. 3, Fraternal Order of Police ("FOP"), which is a Maryland corporation that is designated as the exclusive representative of Baltimore Police Officers holding the ranks of police officer, police agent, flight officer, police sergeant, police lieutenant, and detective. The relationship between employer representative BPD and employee representative Lodge is governed by a Collective Bargaining Agreement ("CBA" or "Agreement").

18. A Memorandum of Understanding II ("MOU II") covers Unit II employees, which include Police Sergeants and Police Lieutenants.

19. The Baltimore City Lodge No. 3, Fraternal Order of Police, Unit II ("Lodge") provides labor management relations, establishes leave and salary requirements, work hours database management for those employed by the police department.

20. During the relevant period, Defendant employed Plaintiff, Lt. Forrest.

21. During the relevant period, Plaintiff was Defendant's employee within the meaning, and entitled to the protections of Title VII.

## **FACTUAL ALLEGATIONS**

22. Plaintiff, Lt. Jerome Forrest, has been employed by Defendant, the Baltimore City Police Department ("BPD") from February 28, 2001 until present, as a Lieutenant in the Internal Affairs Section ("IAS").

23. Since the appointment of Major Stephanie Lansey (Black, female) and Chief David Cali (White, male) to the Office of Professional Responsibility (OPR) in early 2018, Lt. Forrest has faced a series of actions that have detrimentally affected his position as the Administrative Lieutenant at IAS. As a result, Lt. Forrest responded, interviewed and was selected for a position in BPD's Special Operations Section, submitting his Form 70 for transfer on November 27, 2018.

24. However, upon informing Major Lansey and Chief Cali of his selection, Lt. Forrest was in turn informed that he would not be reassigned until a "suitable" replacement for him was found. This is in direct contradiction of BPD policy and practice, despite his initial Form 70 being signed and submitted by Chief Cali and Major Lansey without "pending suitable replacement" being written on the form.

25. Lt. Forrest was previously responsible for supervising 10 individuals (5 police officers and 5 civilians); however, his supervisory capacity has been reduced to only 1 police officer and 1 civilian. Further, he was removed from the DOJ Consent Decree Discussion Team for IA.

26. On or about November 20, 2018, Lt. Forrest discovered that his access level was dropped from level 1 to level 2 in IApro, thus preventing him from performing some of his duties that required level 1 access such as daily audits of the IAPro system, processing re-hire requests from HR, LEOSA requests, AUSA office requests, other jurisdiction requests, expungements, promotional backgrounds, members' IA History for court appearances, inter-departmental transfer requests, ASA requests, managing and updating the suspension list, and processing Good Standing letters. These duties were re-assigned to Lt. Jason Yerg (White, male), Lt. Jason Callaghan (White, male), Lt. John Fernandez (Hispanic, male), Sgt. Glen Jackson (Black, male), Det. Timika Dyson (Black, female) and Det. Amy Strand (White, female). However, Det. Dyson and Det. Strand both have open Ethics numbers and are being investigated by Ethics, for which they have access to level 1 cases.

27. This change in access was ordered by Major Lansey seemingly without Chief Cali`s knowledge. When Lt. Forrest requested to know why his access was changed, Major Lansey responded that she "did not have to explain herself to him."

28. Rather than remedy Lt. Forrest's loss of access, those duties were then reassigned to other police officers in IAS by his supervisors, and Lt. Forrest was instructed to confer with his fellow Officers if he needed anything with level 1 access.

29. However, as system administrator for IApro and BlueTeam, without Lt. Forrest having proper access, all data pulls would not be accurate. Additionally, Lt. Forrest was informed that Major Lansey had given Sgt. Glen Jackson responsibility over management of the suspension list, despite this responsibility having been Lt. Forrest's.

30. On or about December 5, 2018, in an email sent out via BPD Broadcast, IA Command stated in part that members should discontinue the practice of contacting specific

individuals (specifically, Lt. Forrest) in IA by email or telephone to obtain disciplinary records and all other informational requests. Instead, all requests were to be sent to another email that Lt. Forrest did not have access to.

31. On or about December 20, 2018, Lt. Forrest's admin access to IApro and BlueTeam was restricted under the direction of Major Lansey. Losing admin access to IApro prevented Lt. Forrest from making changes and correcting errors on the backend of the system. Further, losing Admin access to BlueTeam prevented Lt. Forrest from assisting the field supervisors when they encountered technical issues with BlueTeam.

32. On or about January 11, 2019, Sgt. Lloyd and Lt. Forrest met with Chief Cali and Major Lansey about Lt. Forrest's transfer, which is when they informed him that they would not let him leave until they found a replacement even though there were already several lieutenants in IAS at the time. However, other Officers who had been in IAS have been previously reassigned without a need to find a replacement beforehand. Chief Cali stated that he wouldn't let Plaintiff leave until he received a replacement for him, even with all the lieutenants currently in IA. He added that he didn't have anyone in mind, nor did he have anything in place to get a replacement. The Chief stated he would be "crazy" if he released someone from IA before getting another person as a replacement. When Plaintiff asked the Chief why Sgt. Lloyd couldn't act as SIC with the guarantee from the PC that Plaintiff's vacant position will be filled later, the Chief stated, "The PC is my friend, but I don't trust the PC."

33. On or about January 28, 2019, Lt. Forrest discovered his access level was once again demoted from level 2 to level 3. Further, Lt. Gene Ryan was transferred to IAS as Lt.

Forrest's replacement. However, Lt. Forrest was never notified of when to report to his new assignment in SOS.

34. As of February 4, 2019, IAS had a total of 9 lieutenants and yet Lt. Forrest was still not allowed to leave for his new position. It was not until Lt. Forrest contacted the Fraternal Order of Police (FOP) and their lawyers that Chief Cali and Major Lansey were notified of the violation of the FOP Contract.

35. 7. After Major Lansey was confronted by the FOP for her violation, Lt. Forrest was called into her office and told that he must end his secondary employment with CI-Technologies because its approval was being rescinded, even though Lt. Forrest had had this secondary employment since 2015 with no issues. This caused Plaintiff to suffer significant loss of income and job opportunity.

36. After finally being transferred to SOS from IAS, Lt. Forrest worked in SOS for 11 months. Then there was a posting for a vacancy in IAS for a Lieutenant's position.[1]  Even though Major Lansey was still assigned there, Lt. Forrest inquired about the position and was told that under the new Deputy Commissioner, Brian Nadeau, things would be different under his command. As a result, Lt. Forrest submitted a transfer request to return to PIB. He was interviewed and selected due to his experience and vast knowledge of working in IA.

37. Before reporting back to PIB, DC Brian Nadeau directed Lt. Forrest's new supervisor, Capt. Donald Diehl to talk with him about what things would be like upon his return to PIB. Capt. Diehl informed Lt. Forrest that DC Nadeau had instructed Major Lansey not to have any direct contact with him. This clearly shows that even his upper command was aware of her treatment of Lt. Forrest, and therefore had to direct her not to have any contact

---

[1] IAS has since been renamed as the Public Integrity Bureau (PIB).

with him. However, this instruction caused Plaintiff reputational harm and emotional distress in addition to the negative impact to his work as Plaintiff then had to work around this structural gap in his chain of command.

38. All of the above instances are evidence of the consistent discriminatory treatment that Lt. Forrest faced at the hands of Major Lansey and Chief Cali for no reason other than that his skin color is darker than his coworkers'. The more Lt. Forrest spoke up about the treatment he was facing, the more he was subjected to a hostile work environment and retaliation.

39. In contrast to Plaintiff, other Officers not of his protected categories have received more favorable treatment and have been approved for transfers without first finding replacements:

   a. Lt. Robert Morris (White, male) was assigned to Ethics, and he was allowed to be transferred to Criminal Intel without being forced to stay until another Lieutenant arrived.  Lt. Morris' last day in Ethics was May 11, 2018.  Sgt. Anthony Faulk (Ethics) then assumed the responsibilities as SIC during Lt. Morris' absence.

   b. Additionally, Sgt. Michael Brinn (White, male), Sgt. Theresa Scott (Black, female), CSO Michelle Cunningham (Black, female), and OSS IIII Debbie Crockett (Black, female) were transferred without replacements.

   c. Lt. Gene Ryan (White, male) was transferred to IAS on January 28, 2019 as Plaintiff's replacement without a HR order, bringing the total number of lieutenants in IAS to 8.  However, Plaintiff was not instructed to report to his new assignment in SOS.

   d. On February 4, 2019, Lt. Douglas Shroyer (White, male) was also transferred to IAS without an HR order, bringing the total number of Lieutenants in IAS to 9.

40. Plaintiff has since been the target of race and color discrimination, retaliation, and workplace hostility. The aforementioned misconduct was so egregious and pervasive that it has affected the Plaintiff's mental, emotional, and physical wellbeing in irreparable ways.

41. Upon information and belief, the Defendant's own EEO unit sustained multiple allegations against Major Lansey, including retaliation based on the EEO complaint that Lt. Forrest filed. However, Lt. Forrest had to inquire about the outcome of the investigation, and it was only then that he was sent a letter contradicting the actual sustained findings of the investigation. The Defendant delayed informing Lt. Forrest of the outcome following the investigation; prolonging the timeline for final findings beyond the statutory window to elevate Lt. Forrest's claims to the federal EEOC.

42. Plaintiff is now forced to file suit due to the Defendants' inability to remedy their unlawful conduct, which has cost Plaintiff significant financial strain as well as emotional distress. Due to the discriminatory and retaliatory treatment Plaintiff experienced, he suffers daily stress and anxiety and has experienced lasting harm to his career advancement which are ongoing to this day.

43. The Defendants' discriminatory and retaliatory practices have been effectuated in violation of both Title VII of the Civil Rights Act and Section 1981/1983.

## COUNT I

## VIOLATION OF TITLE VII – RACE DISCRIMINATION

44. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

45. A *prima facie* case of race discrimination requires a showing of four (4) elements: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an

adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

46. Here, the four (4) elements of a *prima facie* case of race discrimination are met. The Plaintiff is African American and Black, and is considered a member of a protected class as stipulated under Title VII of the Civil Rights Act of 1964. Additionally, Plaintiff is a qualified police officer, as he has almost twenty-two (22) years on the force and maintained the title of Lieutenant. The Plaintiff suffered an adverse employment action directly related to his position of being a protected class member as recognized under Title VII of the Civil Rights Act of 1964.

47. Plaintiff is a member of a protected class as an African American man.

48. Because of his race, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of Title VII.

49. Defendants' foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's employment.

50. Defendant knew that Plaintiff was African American prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of his race.

51. Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his race.

52. Defendant reprimanded Plaintiff in a way that deprived him of workplace safety and otherwise adversely affected his status as an employee because of his race.

53. Other employees who were similarly situated, but were non-Black or Caucasian individuals, have been treated more favorably than the Plaintiff with regard to the terms and conditions of employment and workplace conditions.

54. Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

55. Plaintiff's race was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

56. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

57. Further, Defendant's treatment and actions are ongoing.

58. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of his race.

59. Defendant discriminated against Plaintiff because of his race by engaging in, tolerating, or failing to prevent race discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

60. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

61. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, career opportunities, medical expenses, and costs – and is entitled to all available legal and equitable remedies.

62. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

63. Baltimore City Police Department must comply with Title VII, but by and through their conduct, have violated Title VII.

## COUNT II

### VIOLATION OF TITLE VII – HOSTILE WORK ENVIRONMENT

64. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

65. When hostile work environment is alleged to have occurred as a result of unlawful discrimination, the Complainant must show that: (1) he belongs to a statutorily protected class; (2) he was subjected to harassment in the form of unwelcome verbal or physical conduct; (3) the harassment complained of was based on his statutorily protected class; (4) the harassment affected a term or condition of employment[2] and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability. *See Henson v. City of Dundee*, 682 F.2d 897 (11th Cir. 1982); *Humphrey v. United States Postal Service*, EEOC Appeal No, 01965238 (October 16, 1998); *Harris v. Forklift Systems, Inc.*, 510 U.S. at 21 (1993).

66. The actions and conduct of the above-described perpetrators as set forth herein created a hostile, offensive and intimidating work environment based upon Plaintiff's race and detrimentally affected Plaintiff.

67. The actions and conduct by the above-described perpetrators as set forth herein were severe and pervasive and constituted discrimination based on race.

---

[2] The phrase "terms, conditions and privileges of employment" in Title VII is an expansive concept which sweeps within its protective ambit the practice of creating a working environment heavily charged with racial discrimination (or retaliation). One can readily envision working environment so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of group of workers. *Rogers v. EEOC*, 454 F.2d 234 (1971).

68. The actions and conduct described herein would have detrimentally affected a reasonable person of the same race in Plaintiff's position.

69. Defendant knew or should have known of the harassment, discrimination, and disparate treatment described herein. Defendant has failed to address the problems and further failed to implement effective and appropriate measures to stop these acts.

70. By failing to conduct a prompt and thorough investigation of Plaintiff's allegations of discrimination; failing to redress the discrimination of Plaintiff; by consciously failing to protect Plaintiff from discrimination within the Department; and by punishing Plaintiff for his complaints of discrimination and disparate treatment, Defendant exacerbated the hostile work environment suffered by Plaintiff and intentionally discriminated against Plaintiff in violation of Title VII.

71. Defendant's actions, and failure to act, amounted to discrimination under Title VII and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The Equal Protection Clause of the Fourteenth Amendment abrogates the states' Eleventh Amendment sovereign immunity. Title VII, through the 1972 amendment known as the Equal Employment Opportunity Act ("EEOA"), provides an enforcement remedy for equal protection violations of state employees through Section 5 of the Fourteenth Amendment.

72. As a direct result of Defendant's unlawful acts, Plaintiff has suffered damages, including but not limited to lost wages and emotional and mental distress.

## COUNT III

### VIOLATION OF TITLE VII – RETALIATION

73. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

74. Title VII of the Civil Rights Act prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e–2(a)(1), and from retaliating against employees for engaging in activity protected by Title VII, *id.* § 2000e–3(a). To that end, an employer may not create or condone a hostile or abusive work environment that is discriminatory. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64–65 (1986).

75. Here, the Plaintiff faced retaliation for the complaint he submitted internally with the Department, and then externally with the EEOC.

76. Soon after complaining, Plaintiff was subjected to the ongoing unlawful conduct and adverse actions alleged throughout this Complaint in violation of Title VII.

77. Defendant subjected Plaintiff to the aforementioned adverse employment actions because of his opposition to the unlawful and discriminatory employment practices of Defendant in violation of Title VII.

78. Defendant, including Plaintiff's supervisors, knew of Plaintiff's engagement in protected activity prior to engaging in the aforementioned adverse actions when they were informed by Plaintiff directly, advised by an EEO representative, or otherwise should have known that Plaintiff engaged in the complaint process based on his informal and formal complaint filings. The adverse retaliatory actions to which Plaintiff has been subjected to are a direct result of Plaintiff having previously engaged in statutorily-protected activity.

79. Plaintiff's prior protected activity was a determining factor in Defendant's unlawful conduct toward Plaintiff.

80. Plaintiff's prior protected activity was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

81. Similarly situated employees (no known prior EEOC activity) were not subjected to the same, similar, or any adverse treatment.

82. Defendant's unlawful conduct has created a climate of fear and isolation for Plaintiff and other employees, which creates a chilling effect in violation of Title VII.

83. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

84. Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

85. Defendant's retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his participation and opposition to Defendant's discriminatory conduct.

86. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

87. Defendants' actions were intentional, reckless, and malicious.

88. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

89. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and his injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

90. Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

91. Baltimore City Police Department must comply with Title VII, and by and through their conduct, violated the law.

## COUNT IV

### SECTION 1983 CLAIM FOR VIOLATION OF PLAINTIFF'S CIVIL RIGHTS UNDER SECTION 1981 OF THE CIVIL RIGHTS ACT

92. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

93. Plaintiff brings a claim of violation of his freedom of speech and freedom of expression under the First Amendment to the U.S. Constitution by Defendant and its named Responsible Management Officials, for its acts of retaliation in violation of 42 U.S.C. §1981 through 42 U.S.C. §1983.

94. Section 1983 provides an individual the right to sue state government employees and others acting "under color of state law" for civil rights violations.

95. The Defendant, and its responsible management officials, under 42 U.S.C. § 1983 are persons who acted "under the color of state law."

96. Defendant, BPD, unlawfully deprived Plaintiff of his civil rights in violation of Sections 1981 and 1983 of the Civil Rights Act and the First Amendment when it retaliated against Plaintiff for having engaged in protected activity by complaining of discrimination on the

basis of his race, thereby punishing Plaintiff for exercising his rights and discouraging him as well as others from continuing to exercise such rights in the future.

97. Defendant treated Plaintiff disparately or pretextually in the terms and conditions of his employment compared with the way non-Black employees, or employees that had not engaged in protected activity by complaining of disparate treatment, were treated.

98. Plaintiff alleges that because he engaged in protected activities, he was illegally subjected to a pattern of further retaliation, harassment, and disparate treatment.

99. The acts described above are part of an institutional practice or custom, constituting an official policy of the Baltimore Police Department to cover up officer misconduct, discrimination, and retaliation against fellow Officers who stand up against the Department for violations of their civil rights that should protect them from discrimination and retaliation in the workplace.

100.     At all times relevant hereto, Defendant acted pursuant to a custom or policy of the Baltimore Police Department.

101.     Defendant failed to adopt clear policies and failed to properly train its management officials in handling, managing, and protecting employees who engage in statutorily-protected activities within the Police Department.

102.     As an African American, Plaintiff is a member of a protected class.

103.     Because of his race (African American) and his engagement in protected activity, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint under Section 1983.

104.     Defendant's foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's employment.

105.     Defendant knew that Plaintiff had complained of discriminatory and disparate treatment prior to the adverse actions described throughout the Complaint and was aware or should have been aware of the discrimination Plaintiff was subjected to because of his race and the retaliation that he was subsequently subjected to.

106.     Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his race (African American) and for his participation in statutorily-protected EEO activity.

107.     Defendant has limited, segregated, and classified Plaintiff in a way that deprived him of employment opportunities and otherwise adversely affected his status as an employee, because of his race (African American) and in retaliation for his statutorily-protected activities.

108.     Other employees who were similarly situated, but members of a different class than Plaintiff, have been treated more favorably than the Plaintiff in the terms and conditions of employment.

109.     Plaintiff consistently attempted to report the pervasive culture and custom within BPD of treating African American officers differently than White officers when it came to promotions, disciplinary actions, and conduct.

**110.**     Plaintiff's allegations clearly show a custom of retaliation as required by Section 1983.

111.     Plaintiff's engagement in protected EEO activity was a determining factor in Defendant's unlawful conduct toward Plaintiff.

112.     The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

113.     Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his race (African American) and was in retaliation for his protected conduct.

## COUNT V

## VIOLATION OF MARYLAND FAIR EMPLOYMENT PRACTICES ACT ("FEPA")

114.     Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

115.     The Maryland Fair Employment Practices Act (FEPA), Md. Code Ann., State Gov't, § 20-601 *et seq*. outlaws discrimination in employment based on race, color, religion, sex, age, national origin, marital status, sexual orientation, gender identity, genetic information, or disability by employers with more than 15 employees.

116.     Under FEPA, an employer can be held legally responsible if the person responsible for the harassment can make or recommend employment decisions (e.g., hiring and firing, promotion and demotion, and reassignments) or directs, supervises, or evaluates the work activities of the employee, even if that person does not have the power to make employment decisions.  Additionally, an employer can be liable if its own negligence leads to harassment or enables harassment to continue.

117.     Harassment is unwelcome or offensive conduct that is based on "race, color, religion, ancestry or national origin, sex, age, marital status, sexual orientation, gender identity, or disability."

118.     The Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his race (African American) and color (Black).

119.     Pursuant to the Local Government Tort Claims Act ("LGTCA"), Md. Code (2020
Repl. Vol., 2021 Supp.), § 5-301 et seq. of the Courts and Judicial Proceedings Article
("C.J."), Plaintiff has provided sufficient notice to Defendant through his filing of internal
and federal EEO charges regarding the claims stated in this Complaint.[3]

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Lt. Jerome Forrest, respectfully prays that this Court grant him
the following relief:

a.   Enter a declaratory judgement finding that the foregoing actions of Defendant violated
Title VII, Sections 1981 and 1983, and FEPA;

b.   Enter a permanent injunction directing Defendant to take all affirmative steps necessary to
remedy the effects of the illegal, discriminatory conduct described herein and to prevent
similar occurrences in the future;

c.   Award back pay and compensatory damages in the amount of $500,000 (five thousand
dollars and zero cents) that would fully compensate Plaintiff for the economic loss, loss of
promotional potential, reputation, lost wages, lost job benefits; physical and psychological
injury, humiliation, embarrassment; and mental and emotional distress caused by the
conduct of the Defendant alleged herein;

d.   Award Plaintiff reasonable attorneys' fees and costs incurred in this action; and

e.   Order such other relief as this Court deems just and equitable.

---

[3] "[S]trict compliance with the notice provisions of the LGTCA is not always required; substantial compliance may
suffice." *Renn v. Bd. of Comm'rs of Charles Cty*, 352 F. Supp. 2d 599, 603 (D. Md. 2005). Substantial compliance is
satisfied "[w]here the purpose of the notice requirements is fulfilled, but not necessarily in a manner technically
compliant with all of the terms of the statute." *Id.* In the context of employment discrimination, some courts have held
that notice of an EEOC charge constitutes substantial compliance, at least if notice is provided to defendant by the
LGTCA deadline and the charge provides "the identity of the claimant, the time and place of the event, the nature of
the claim, and the Plaintiff's intent to pursue litigation." *Nelson v. City of Crisfield*, L-10-1816, 2010 WL 4455923, at
*2 (D. Md. Nov. 5, 2010).

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable herein.

Dated: December 14, 2022

Respectfully submitted,

By: /s/ Dionna Maria Lewis
Dionna Maria Lewis, Esq.
Bar No. 19486
District Legal Group, PLLC
700 Pennsylvania Ave SE, Suite 2098
Washington, D.C.20003
Tel. (202) 486-3478
Dionna@DistrictLegalGroup.com
*Counsel for Plaintiff Jerome Forrest*